1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7    THE ESTATE OF ORBIE COGGINS,
     deceased, by and through GAIL              NO:  2:13-CV-414-RMP
8    COGGINS BROOKS and DUANE
     COGGINS, as Personal                       ORDER GRANTING MOTION FOR
9    Representatives,                            SUMMARY JUDGMENT

10                          Plaintiffs,
               v.
11
     WAPATO POINT MANAGEMENT
12   COMPANY HEALTH AND
     WELFARE PLAN; WAPATO POINT
13   MANAGEMENT COMPANY, INC.,
     as Plan Administrator,
14
                            Defendants.
15

16          Before the Court is a motion for summary judgment brought by Defendants

17   Wapato Point Management Health and Welfare Plan and Wapato Point

18   Management Company, Inc. (collectively, "Defendants").  ECF No. 17.  The Court

19   has reviewed the briefing and all related documents.  The Court is fully informed.

20

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 1

BACKGROUND

The Estate of Orbie Coggins ("Plaintiff") alleges that Defendants breached their fiduciary duties by failing to notify Mr. Coggins of the termination of his life insurance benefits coverage.  ECF No. 2-1 at 11.  Mr. Coggins participated in a Company Health and Welfare Plan ("Company Plan") that included life insurance coverage of two times an employee's annual salary.  ECF No. 16 at 2.  On or about May 1, 2009, Mr. Coggins's union and Defendant Wapato Point Company reached a Collective Bargaining Agreement ("CBA") that required employees to participate in the Northwest Laborers-Employees Health and Security Trust Fund ("Union Plan").  ECF Nos. 16 at 4; 16-6 at 31-32.  Defendants state that life insurance benefits under the Union Plan were limited to $5,000.  ECF No. 3 at 6.  Plaintiff claims, however, that Mr. Coggins received a 2010 benefits statement from Defendant Wapato Point Company indicating that he was still paying into the Company Plan for life insurance.  ECF Nos. 22 at 15; 20-2.

Mr. Coggins died on December 16, 2011, and the beneficiaries of his estate sought his life insurance benefits under the Company Plan.  ECF Nos. 2-1 at 10; 16 at 5.  The life insurance provider indicated that Defendant Wapato Point Company had terminated coverage on May 31, 2009.  ECF No. 2-1 at 10, *see also* ECF No. 16 at 5.  The union filed a grievance, which was subject to mediation and resulted in a settlement check for Plaintiff in the amount of $10,000.  ECF No. 16 at 5, 7.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 2

The parties also agreed that union-represented employees would be re-enrolled in the Company Plan's life insurance.  ECF No. 16 at 7.  The agreement purports to resolve all claims regarding the "payment of benefits to any deceased employee based on an alleged failure to maintain life insurance benefits."  ECF No. 16-11 at 44.

In this case, Plaintiff claims that Defendants breached their fiduciary duties by failing to provide complete and accurate information regarding the status and termination of Mr. Coggins's insurance coverage.  ECF No. 2-1 at 11.  The action was removed to this Court from Chelan County Superior Court based on federal question jurisdiction, 28 U.S.C. § 1331.  ECF No. 1 at 2.

## ANALYSIS

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.  *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The party asserting the existence of a material fact must show "'sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to

resolve the parties' differing versions of the truth at trial.'" *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).  The nonmoving party "may not rely on denials in the pleadings, but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

The mere existence of a scintilla of evidence is insufficient to establish a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  However, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . .  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 249, 255.  In deciding a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631-32.

Defendants move for summary judgment on seven grounds.  *See* ECF No. 17 at 6-17.  First, Defendants assert that the Court lacks subject matter jurisdiction because Plaintiff failed to exhaust the grievance procedure provided in the Collective Bargaining Agreement ("CBA").  Second, Defendants argue that summary judgment is appropriate because Plaintiff's action is preempted by the

CBA and by § 301 of the Labor Management Relations Act.  Third, Defendants

claim that Plaintiff's cause of action is barred by the statute of limitations that

applies to "hybrid" claims against an employer and a union.  Fourth, in the

alternative, Defendants state that Plaintiff's claim is barred by the statute of

limitations that applies to vacating an arbitration award.  Fifth, Defendants propose

that no fiduciary obligation should extend to them because they are prohibited

from dealing directly with union employees.  Sixth, Defendants aver that they

satisfied any duty to notify Mr. Coggins of the change in death benefits.  Seventh,

Defendants contend that even if notice were required and not provided, Plaintiff

lacks a remedy.

   *Exhaustion of grievance procedure*

   Defendants argue that Plaintiff was required to exhaust the grievance

procedure under the CBA and that Plaintiff's failure to do so is fatal to its claim.

ECF No. 17 at 6-8.  Defendants claim that Plaintiff is limited to the $10,000

settlement that resulted from the prior mediation.  ECF No. 17 at 8.  Plaintiff

responds that it cannot be bound to the grievance procedure because the Estate of

Orbie Coggins was not a party to the CBA or an employee in the plan.  ECF No.

22 at 4-9.

   Generally, "an ERISA claimant must exhaust available administrative

remedies before bringing a claim in federal court."  *Barboza v. California Ass'n of*

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 5

*Prof'l Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011).  Here, the CBA provides a detailed procedure for addressing employee grievances.  *See* ECF No. 16-6 at 33-34.

Plaintiff does not contend that the grievance procedure would not have applied to a claim brought by Mr. Coggins himself, or that the grievance procedure does not cover disputes regarding the life insurance benefits that are at issue in this case.  Rather, Plaintiff claims that "the Estate of Coggins cannot be bound to a collective bargaining agreement that it was not a party to[,]" ECF No. 22 at 4, referring to the general rule that a third-party beneficiary is not constrained by a contract that it did not sign, ECF No. 22 at 4-9 (discussing *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) and *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009)).

Neither of the cases that Plaintiff discusses in detail concerns whether a decedent's estate is bound by contractual administrative remedies that applied to the decedent.  In *Comer*, an investment advisor attempted to compel an ERISA-plan participant to arbitrate his claim.  436 F.3d at 1099-1100.  The plan trustees had entered into agreements with the investment advisor that contained arbitration clauses, but Comer, the participant, had not signed an arbitration agreement.  *Id.* The court considered whether the arbitration agreements applied to Comer's ERISA claim either under contract or agency principles or through Comer's status

as a third-party beneficiary. *Id.* at 1101. The court held that Comer was not required to arbitrate his claim because of the general rule that a nonsignatory is not bound by an arbitration clause. *Id.* at 1103-04.

In *Mundi*, a widow's husband had obtained a home equity line of credit from a bank and memorialized the agreement in a document that included an arbitration procedure. 555 F.3d at 1043. In conjunction with the line of credit, the husband had purchased credit insurance to cover the amount of the loan. *Id.* at 1044. Mundi, the widow, filed a claim with the insurer upon her husband's death. *Id.* The insurer, which was not a party to the arbitration agreement, attempted to compel Mundi to arbitrate her claims because of the arbitration agreement with the bank. *Id.* The insurer contended that Mundi's claims were subject to the arbitration agreement because they arose from and related to the line of credit and that equitable estoppel should be applied to compel arbitration. *Id.* at 1044. The court declined to compel arbitration, finding that the face of the credit agreement indicated that the dispute was not within the scope of the arbitration provision and that equitable estoppel was inappropriate because Mundi's claim was not sufficiently related to the credit agreement. *Id.* at 1045, 1047.

To summarize, *Comer* concerned a *signatory's* attempt to require a *nonsignatory* to arbitrate its claim, and *Mundi* involves a *nonsignatory's* motion to compel a *signatory* to arbitrate. *Comer*, 436 F.3d at 1101-02; *Mundi*, 555 F.3d at

1    1046.  Neither *Comer* nor *Mundi* is directly on point because Plaintiff does not

2    dispute that the grievance procedure would have applied to a claim brought by Mr.

3    Coggins himself, if he were alive.  Although the parties do not discuss whether an

4    estate's legal actions are constrained by agreements that the decedent made, it is a

5    significant issue.

6          Mr. Coggins's estate is bound to the same arbitration agreement that applied

7    directly to Mr. Coggins.  The Federal Rules of Civil Procedure provide that the

8    capacity to sue in a representative capacity is determined "by the law of the state

9    where the court is located."  Fed. R. Civ. P. 17(b).  Although courts have primarily

10   looked to Rule 17(b) when determining whether a party is qualified to act as a

11   personal representative under state law, *see, e.g.*, *Pantano v. United Med. Labs.,*

12   *Inc.*, 456 F.2d 1248, 1249 (9th Cir. 1972), it is logical that state law would also

13   affect a personal representative's claims on behalf of the estate.

14         State law would not allow Mr. Coggins's estate to pursue a claim if Mr.

15   Coggins himself would have been barred.  Under Washington law, "[a]ctions for

16   the recovery of any property or for the possession thereof, and all actions founded

17   upon contracts, may be maintained by and against personal representatives in all

18   cases *in which the same might have been maintained by and against their*

19   *respective testators or intestates*."  RCW 11.48.090 (emphasis added).  *See also* 31

20   AM. JUR. 2D *Executors and Administrators* § 1091 ("As a rule, the personal

representative of the decedent has no more right than the decedent would have in bringing a cause of action or risk in being named in one.") (footnotes omitted); *Park v. Trustees of 1199 SEIU Health Care Emps. Pension Fund*, 418 F. Supp.2d 343, 354 (S.D.N.Y. 2005) (finding that an estate's ERISA claim failed in part because the estate failed to exhaust administrative remedies provided for under the plan). Plaintiff does not dispute that the grievance procedure would have applied to a claim brought by Mr. Coggins, and the Court will not allow Mr. Coggins's estate to circumvent that procedure.

Even if the grievance procedure did not apply directly to Plaintiff's claim, however, Plaintiff would be estopped from evading the requirement to exhaust administrative remedies. "Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer*, 436 F.3d at 1101 (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). In *Comer*, the Ninth Circuit held that equitable estoppel did not obligate Comer to arbitrate his claim because there was no evidence that he had knowingly exploited the investment management agreements that contained the arbitration clauses. *Id.* at 1102. Comer had not sought to enforce the terms of the agreements, "[n]or did he do so by bringing [the] lawsuit, which he base[d] entirely on ERISA, and not on the investment management agreements." *Id.*

1    Here, the CBA includes a grievance procedure that "constitute[s] the sole

2    and exclusive method of adjusting all complaints or disputes which the employees

3    may have, which relate to, or concern the provisions of this Labor Agreement, and

4    impact the employees and the Employer."  ECF No. 16-6 at 33.  Unlike in *Comer*,

5    Plaintiff seeks benefits that it argues remained in place at the conclusion of the

6    negotiations, which were memorialized in the CBA.  *See* ECF No. 22 at 14.  Thus,

7    Plaintiff is estopped from claiming the benefits of the CBA without carrying the

8    burden of exhausting the contract's administrative remedies.

9        *Availability of a remedy*

10    Defendants argue that even if they failed to provide necessary notice,

11    Plaintiff lacks a remedy.  ECF No. 17 at 16-17.  Plaintiff did not address this

12    argument in its response.  *See* ECF No. 24 at 1-2.

13    The Ninth Circuit has found that an employee lacked a remedy in a similar

14    case, even though the employer had violated its fiduciary duties under ERISA.  In

15    *Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064 (9th Cir. 2009), an employee

16    suffered serious injuries in an automobile accident and then learned from her

17    employer that, months earlier, her ERISA benefit plan for long-term disability had

18    been "'cancelled inadvertently[.]'"  419 F.3d at 1066-68.  The court found that the

19    employer's "notification, three months after the plan's cancellation, [did] not

20    constitute timely notification."  *Id.* at 1072.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 10

1    Although the Ninth Circuit concluded that the employer had violated its

2    fiduciary duty under ERISA, the court found that no remedy was available.  One of

3    ERISA's civil enforcement provisions states that a participant or beneficiary may

4    bring an action "to recover benefits due to him under the terms of his plan, to

5    enforce his rights under the terms of the plan, or to clarify his rights to future

6    benefits under the terms of the plan . . . ."  29 U.S.C. § 1132(a)(1)(B).  Section

7    1132(a)(1)(B) provided no relief to Peralta because the plan was never reinstated

8    after it had been canceled.  419 F.3d at 1073.

9    The court also considered whether relief was available under § 1132(a)(3),

10   which authorizes a participant "(A) to enjoin any act or practice which violates any

11   provision of this subchapter or the terms of the plan, or (B) to obtain other

12   appropriate equitable relief (i) to redress such violations or (ii) to enforce any

13   provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).

14   The court stated that "[t]here seems to be little problem in providing an avenue for

15   the payment of benefits if serious procedural errors result in the denial of benefits;

16   and in a case . . . where fraud is involved, the courts will go to great lengths to find

17   a vehicle for reinstatement of benefits via a § 1132(a)(3) equitable remedy."  419

18   F.3d at 1074-75.  *Peralta* also notes that the Supreme Court has "distinguished

19   between equitable claims that seek to prevent future losses, which are permissible

20   under ERISA, and those that seek past due sums, which are not."  *Id.* at 1075

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 11

1  (discussing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211-12

2  (2002)).  The *Peralta* court affirmed the grant of summary judgment against the

3  employee, finding that she was not entitled to relief under § 1132(a)(3) because

4  there was no evidence that the employer engaged in egregious behavior, such as

5  deliberately misleading its employees, and because the only remedy sought was

6  money damages for past harm.  *Id.* at 1075-76.

7       Here, Plaintiff has no remedy under ERISA for similar reasons.  Although

8  Defendants reinstated the life insurance benefit plan under which Plaintiff seeks to

9  recover, ECF No. 16 at 7, it is undisputed that Mr. Coggins was not covered by the

10  life insurance at the time of his death.  Like the employee in *Peralta*, Plaintiff

11  "actually seeks a monetary recovery from [Defendants] equal to the . . . benefits

12  that would have been available had the plan not been cancelled."  419 F.3d at

13  1073.  Relief is not available under § 1132(a)(1)(B).

14       Plaintiff also is not able to recover under § 1132(a)(3).  Although the parties

15  dispute whether the CBA allowed Defendants to cancel the life insurance benefits

16  included in the Company Plan, there is no evidence that the employer defrauded

17  Mr. Coggins or engaged in other egregious conduct that might justify reinstatement

18  of benefits through a § 1132(a)(3) equitable remedy.  Also, Plaintiff seeks damages

19  for only past harm, which does not support a valid equitable claim under ERISA.

20

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 12

CONCLUSION

Plaintiff has not exhausted the CBA's administrative remedies, which apply to Mr. Coggins's estate just as they would have constrained Mr. Coggins himself. If the administrative remedies did not directly bind Plaintiff, the doctrine of equitable estoppel would prevent Plaintiff from seeking to enforce the terms of the CBA without complying with the CBA's administrative remedies.  Even if Plaintiff had a viable claim and Defendants had breached their fiduciary duties under ERISA, however, Plaintiff lacks a remedy as a matter of law.

Because Defendants are entitled to summary judgment on these grounds, the Court does not address Defendants' remaining arguments.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

The District Court Clerk is hereby directed to enter this Order, enter Judgment accordingly, provide copies of this Order to counsel, and **close** this case.

**DATED** this 23rd day of May 2014.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 13